## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Virginia Druschel and Robert Druschel, *on behalf of themselves and others similarly situated*, | ) Case No:  3:20-cv-1086 |
| | ) |
| | ) CLASS ACTION COMPLAINT |
| | ) |
| Plaintiffs, | ) JURY TRIAL DEMANDED |
| | ) |
| v. | ) |
| | ) |
| Revenue Management Group, Inc. d/b/a KeyBridge Medical Revenue Care, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| ————————————————— | ) |

**Nature of this Action**

1.     Virginia Druschel and Robert Druschel ("Plaintiffs") bring this class action against Revenue Management Group, Inc. d/b/a KeyBridge Medical Revenue Care ("Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

2.     Section 227(b)(1)(A)(iii) of the TCPA provides, in pertinent part:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

\*        \*        \*

 (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

3.     Upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system or an artificial or prerecorded voice to place non-emergency calls to telephone numbers assigned to a cellular telephone service, without prior express consent, in that it continues to place calls to cellular telephone numbers after the regular and customary users of those cellular telephone numbers instruct Defendant to stop calling those cellular telephone numbers.

4.     Section 1692c of the FDCPA provides, in pertinent part:

(a) Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

(1)     at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer.

5.     Upon information and good faith belief, Defendant routinely violates 15 U.S.C. § 1692c by communicating with a consumer in connection with the collection of any debt at a time known to be inconvenient to the consumer, in that it continues to place calls to telephone numbers, in connection with its efforts to collect debts in default, after being instructed to stop calling those telephone numbers during work hours or other temporal restrictions.

6.     Section 1692d of the FDCPA provides, in pertinent part:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. . . .

7.     Upon information and good faith belief, Defendant routinely violates 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse consumers in connection with the collection of debts, in that it continues to place calls to

telephone numbers, in connection with its efforts to collect debts in default, after being instructed to stop calling those telephone numbers.

8.      Section 1692e of the FDCPA provides, in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
        (2)      The false representation of—
                 (A)      the character, amount, or legal status of any debt[.]

9.      Upon information and good faith belief, Defendant routinely violates 15 U.S.C. § 1692e by using false, deceptive, or misleading representations to induce payment on an alleged debt, including by misstating and misrepresenting the balances on those debts, and misrepresenting how consumers' payments will be applied to their alleged debts.

10.      Section 1692h of the FDCPA provides:

If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.

11.      Upon information and good faith belief, Defendant routinely violates 15 U.S.C. § 1692h by applying payments on debts to accounts other than those directed by the consumers making those payments.

**Jurisdiction and Venue**

12.      This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3), 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

13.      Venue is proper in this Court under 28 U.S.C. § 1391(b), as a substantial portion of the acts and transactions giving rise to Plaintiffs' action transpired in this district, and as Defendant is headquartered and transacts business in this district.

**Parties**

14.     Ms. Druschel is a natural person.

15.     At all relevant times Ms. Druschel resided in Fulton County, Ohio.

16.     Mr. Druschel is a natural person.

17.     At all relevant times Mr. Druschel resided in Fulton County, Ohio.

18.     Plaintiffs are obligated, or allegedly obligated, to pay debts owed or due, or asserted to be owed or due, to a creditor other than Defendant.

19.     Plaintiffs' obligations, or alleged obligations, owed or due, or asserted to be owed or due, arise from transactions in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, personal medical care.

20.     Plaintiffs are "consumers" as defined by 15 U.S.C. § 1692a(3).

21.     Defendant is incorporated in Delaware and headquartered in Lima, Ohio.

22.     Defendant is an entity that at all relevant times was engaged, by use of the telephone and mails, in the business of attempting to collect a "debt"—in default—as defined by 15 U.S.C. § 1692a(5).

23.     Defendant identified itself as a "debt collector" in written correspondence to Ms. Druschel.

24.     Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

25.     Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

26.     Upon information and belief, at the time Defendant attempted to collect the respective alleged debts from Plaintiffs, the alleged debts were in default, or Defendant treated the alleged debts as if they were in default from the time that Defendant acquired them for collection.

## Factual Allegations

27.     Plaintiffs are current or former patients of ProMedica Health System ("ProMedica").

28.     On February 21, 2019, Defendant mailed a collection letter to Mr. Druschel seeking to collect an alleged debt owed to ProMedica with an account ending in 2355, and showing an outstanding balance of $41.05.

29.     On February 25, 2019, Plaintiffs tendered a $41.05 payment to Defendant on the account ending in 2355.

30.     On or around March 3, 2019, Mr. Druschel received a telephone call from Defendant to his work telephone number while he was working—(419)-475-XXXX.

31.     After answering that call, Mr. Druschel instructed Defendant to stop calling his work telephone number and his cellular telephone number—(567)-344-XXXX.

32.     On March 28, 2019, Defendant mailed a collection letter to Mr. Druschel seeking to collect an alleged debt owed to "VARIOUS ACCOUNTS", ostensibly to ProMedica, with an account ending in 5438, and showing an outstanding balance of $41.05.

33.     On April 15, 2019, Plaintiffs tendered a $41.05 payment to Defendant on the account ending in 5438.

34. On April 9, 2019, Defendant mailed a new initial collection letter to Mr. Druschel seeking to collect an alleged debt owed to ProMedica, with an accounting ending in 9541, and showing an outstanding balance of $210.

35. On or about April 15, 2019, Ms. Druschel called Defendant to discuss the debt collection letter it mailed to Mr. Druschel concerning the account ending in 9541.

36. In that call, Ms. Druschel and Defendant agreed that Plaintiffs would enter a payment plan where Plaintiffs would pay a minimum of $25 each month for the account ending in 9541, with the first payment made on April 15, 2019.

37. In that call, Ms. Druschel asked Defendant's representative if the alleged debts would appear as negative reports on Plaintiffs' credit reports if Plaintiffs adhered to the terms of the agreed payment plan.

38. Defendant's representative stated that it would not submit negative reports to credit reporting bureaus if Plaintiffs adhered to the terms of the payment plan.

39. Also in that call, Ms. Druschel instructed Defendant to remove Mr. Druschel's work telephone number—(419)-475-XXXX—from Plaintiffs' accounts and instructed Defendant not to call that number.

40. On that same call, Ms. Druschel additionally instructed Defendant not to call Mr. Druschel's personal cellular telephone number—(567)-344-XXXX—and instead direct all calls to Ms. Druschel's cellular telephone number after her work hours of 8 a.m. – 4 p.m.

41. Defendant's representative stated that it would remove those telephone numbers from Plaintiffs' accounts and that it would not call Mr. Druschel's work telephone number or cellular telephone number.

42.     Beginning that day, Plaintiffs made payments to Defendant of $25 or greater each month, pursuant to the payment plan.

43.     However, on or around May 3, 2019, Mr. Druschel received a telephone call from Defendant to his work telephone number while he was working—(419)-475-XXXX.

44.     After answering that call, Mr. Druschel instructed Defendant to stop calling his work telephone number and his cellular telephone number—(567)-344-XXXX.

45.     Also on May 3, 2019, after Mr. Druschel instructed Defendant to stop calling his telephone numbers, Ms. Druschel called Defendant from her cellular telephone number and again confirmed Mr. Druschel's request that Defendant stop calling his work telephone number or cellular telephone number and direct all calls to her cellular telephone after her work hours—8 a.m. – 4 p.m.

46.     In that May 3, 2019 call, Ms. Druschel instructed Defendant to place calls to her cellular telephone number—(419) 388-XXXX—regarding the alleged debt.

47.     No matter, Defendant continued to place calls—including on May 8 and May 17, 2019—to Mr. Druschel's work telephone number and to his cellular telephone number.

48.     Some time shortly thereafter, Plaintiffs noticed that Defendant reported to the credit reporting bureaus that Plaintiffs missed payments on their alleged debts, even though Plaintiffs had not missed any monthly payments.

49.     During this period, Defendant mailed additional collection letters to Mr. Druschel, including a letter seeking to collect $186.28 on an account ending in 5438, despite Plaintiffs tendering a payment for the entire balance of the 5438 account on April 15, 2019.

50.    On August 8, 2019, Ms. Druschel called Defendant and asked to discuss the status of Plaintiffs' alleged debts, and Defendant's representative stated that it was unable to locate those accounts.

51.    In that call, Ms. Druschel asked Defendant to call her cellular telephone number—(419) 388-XXXX—only after 4 p.m., as she could not take telephone calls on her cellular telephone during work hours.

52.    On August 12, 2019, Ms. Druschel again called Defendant and spoke to a supervisor named "Nikki" concerning the negative credit information on Plaintiffs' credit reports that were furnished by Defendant.

53.    In that call, Defendant's representative *was* able to identify Plaintiffs' accounts, but stated that it would never have agreed to abstain from reporting negative credit history on Plaintiffs' accounts and that it would never have agreed to a $25-per-month payment plan.

54.    Ms. Druschel reiterated that Defendant previously agreed to those terms in their April 2019 call, and Ms. Druschel asked Defendant to review the call recordings from Plaintiffs' accounts.

55.    On September 6, 2019, Defendant mailed to Ms. Druschel a debt collection letter concerning a ProMedica account ending in 5494, showing an outstanding balance of $510.68.

56.    Then, on September 20, 2019, Defendant mailed to Ms. Druschel a debt collection letter from Defendant concerning the account ending in 5494, now showing a balance of $821.10.

57.    On or around September 20, 2019, Ms. Druschel placed a call to Defendant to investigate the origin of the account ending in 5494.

58.     During Ms. Druschel's call to Defendant, Defendant stated that the $510.68 balance identified in its September 6, 2019 debt collection letter reflected a combination of two other alleged debts, with outstanding balances of $491.60 and $19.08.

59.     Ms. Druschel did not know what accounts these alleged debts related to, so she asked Defendant to provide her with an itemized statement of her alleged debts.

60.     Defendant's representative identified three accounts allegedly associated with Ms. Druschel, but stated that it could not provide an itemized statement of Plaintiffs' alleged debts, and instead offered to mail her a letter showing the status of each of the outstanding alleged debts.

61.     Ms. Druschel then asked Defendant's representative about the outstanding balance on the account ending in 9541, because she intended to pay off the outstanding balance in one lump sum payment.

62.     Ms. Druschel anticipated that her outstanding balance on the account ending in 9541 would be approximately $55, given that she had previously submitted $155 in payments pursuant to her $25-per-month payment plan, including some payments in excess of $40.

63.     Instead, Defendant's representative stated that the outstanding balance on the account ending in 9541 was over $300, due to an "adjustment" to the account and an addition of a new account.

64.     Defendant's representative was unable to explain the reason for an adjustment or addition of a new account to the outstanding balance.

65.     Later that day, Ms. Druschel again called Defendant to inquire as to the status on her outstanding alleged debts and spoke to "Nikki."

66.     During that call, Defendant's representative explained that certain of Plaintiffs' payments were removed from the account ending in 9541 and transferred to other accounts, at the alleged request of the original creditor, ProMedica.

67.     Plaintiffs did not authorize the adjustment or transfer of any payments from the account ending in 9541 to any other account, and Defendant's representative was unable to provide any further information.

68.     After those repeated fruitless conversations, on September 19, 2019, Ms. Druschel once again placed a call to Defendant and once again instructed Defendant to stop calling her cellular telephone number during her work hours.

69.     No matter, Defendant continued to place calls—over fifteen of them—to Ms. Druschel's cellular telephone number during her working hours.

70.     Specifically, Defendant placed calls and left voice messages using an artificial or prerecorded voice to Ms. Druschel's cellular telephone number during working hours on February 8, 12, 22, and 25, 2020, March 11, 17, 25, and 31, 2020, and April 6, 10, and 14, 2020, and continue to the present day.

71.     And, on September 30, 2019, Defendant's representative, "Nikki," called Ms. Druschel, and confirmed that Defendant transferred Plaintiffs' payments from the 9541 account to other, "older" accounts, without Plaintiffs' consent.

72.     As a result, Ms. Druschel informed Defendant that Plaintiffs were disputing the validity and accuracy of their alleged debts, and again requested an itemized statement of the alleged amounts owed by Plaintiffs.

73.    To date, Defendant has not provided Plaintiffs with an itemized statement identifying their alleged debts, and Plaintiffs do not know the total outstanding balance on their alleged debts.

74.    When Plaintiffs revoked consent to receive calls at their work phone numbers and their cellular telephone numbers during work hours, they did not limit their respective revocations of consent to receive telephone calls in connection with any one specific account.

75.    Rather, Plaintiffs intended to revoke consent, and did revoke consent, to receive telephone calls in connection with any and all accounts Defendant associates with their cellular telephone numbers.

76.    Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including Defendant's use of an artificial or prerecorded voice, Defendant placed its calls to Plaintiffs' cellular telephone numbers by using an automatic telephone dialing system.

77.    Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including Defendant's use of an artificial or prerecorded voice, Defendant placed its calls to Plaintiffs' cellular telephone numbers by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

78.    Upon information and good faith belief, Defendant placed its calls to Plaintiffs' cellular telephone numbers voluntarily.

79.     Upon information and good faith belief, Defendant placed its calls to Plaintiffs' cellular telephone numbers under its own free will.

80.     Upon information and good faith belief, Defendant had knowledge that it was using an automatic telephone dialing system and an artificial or prerecorded voice to place its calls to Plaintiffs' cellular telephone numbers.

81.     Upon information and good faith belief, Defendant intended to use an automatic telephone dialing system and an artificial or prerecorded voice to place its calls to Plaintiffs' cellular telephone number.

82.     Upon information and good faith belief, Defendant maintains business records that show all calls it placed to Plaintiffs' cellular telephone numbers, and to class members' telephone numbers, including the dates of the calls.

83.     Upon information and good faith belief, Defendant maintains business records that include notes or designations that record or memorialize Plaintiffs' and class members' requests that Defendant stop calling their telephone numbers, including the respective dates of the requests.

84.     Defendant, upon information and good faith belief, continued to place calls, by using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiffs' cellular telephone numbers following Plaintiffs' respective revocations of consent.

85.     Upon information and good faith belief, Defendant maintains business records that show when Plaintiffs requested that Defendant stop calling their cellular telephone numbers, and all calls that Defendant subsequently placed to Plaintiffs' cellular telephone numbers.

86.     Plaintiffs suffered actual harm as a result Defendant's calls in that they suffered an invasion of privacy, an intrusion into their lives, and a private nuisance.

87.     Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an automatic telephone dialing and an artificial or prerecorded voice to place calls to telephone numbers assigned to a cellular telephone service, absent prior express consent, in that it continues to place calls after being instructed to stop calling those cellular telephone numbers.

**Class Action Allegations**

88.     Plaintiffs bring this action under Federal Rule of Civil Procedure 23, and as representatives of the following classes:

*TCPA Class:* All persons and entities throughout the United States (1) to whom Revenue Management Group, Inc. d/b/a KeyBridge Medical Revenue Care, placed, or caused to be placed, one or more calls, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) within four years preceding the date of this complaint through the date of class certification, (5) after the called party instructed Revenue Management Group, Inc. d/b/a KeyBridge Medical Revenue Care to cease calling his or her cellular telephone number.

*FDCPA Stop-Calling Class*: All persons throughout the United States (1) to whom Revenue Management Group, Inc. d/b/a KeyBridge Medical Revenue Care placed, or caused to be placed, one or more calls, (2) within the one year preceding the date of this complaint through the date of class certification, (3) and in connection with the collection of a consumer debt, (4) after the called party instructed Revenue Management Group, Inc. d/b/a KeyBridge Medical Revenue Care to stop placing calls to his or her telephone number.

*FDCPA Rearranged Payments Class*: All persons throughout the United States (1) to whom Revenue Management Group, Inc. d/b/a KeyBridge Medical Revenue Care associated with more than one alleged debt, (2) who made payments on an alleged debt to Revenue Management Group, Inc. d/b/a KeyBridge Medical Revenue Care, (3) and where Revenue Management Group, Inc. d/b/a KeyBridge Medical Revenue Care transferred or applied that payment to a different alleged debt.

89.     The proposed classes specifically exclude the United States of America, the State of Ohio, counsel for the parties, the presiding United States District Court Judge, the Judges of

the United States Court of Appeals for the Sixth Circuit, the Justices of the United States Supreme Court, any entity in which Defendant has or had a controlling interest, all officers and agents of Defendant, and all persons related to within the third degree of consanguinity or affection to any of the foregoing individuals.

90.     Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an automatic telephone dialing system and an artificial or prerecorded voice to place calls to telephone numbers assigned to a cellular telephone service.

91.     Upon information and good faith belief, the members of the classes are so numerous that joinder of all of them is impracticable.

92.     The exact number of the members of the classes are unknown to Plaintiffs at this time, and can be identified only through appropriate discovery.

93.     The classes are ascertainable in that they are defined by reference to objective criteria.

94.     Upon information and belief, the names and addresses of the members of the classes can be identified through business records maintained by Defendant and by third parties.

95.     There exists a well-defined community of interest in the questions of law and fact that affect the members of the classes.

96.     Plaintiffs' claims are typical of the claims of the members of the classes.

97.     Plaintiffs' claims, and the claims of the members of the classes, originate from the same conduct, practice and procedure on the part of Defendant.

98.     Plaintiffs' claims are based on the same theories as are the claims of the members of the classes.

99.     Plaintiffs suffered the same injuries as each of the members of the classes.

100.    Plaintiffs will fairly and adequately protect the interests of the members of the classes.

101.    Plaintiffs' interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the classes.

102.    Plaintiffs will vigorously pursue the claims of the members of the classes.

103.    Plaintiffs have retained counsel experienced and competent in class action litigation.

104.    Plaintiffs' counsel will vigorously pursue this matter.

105.    Plaintiffs' counsel will assert, protect, and otherwise represent the members of the classes.

106.    The questions of law and fact common to the members of the classes predominate over questions that may affect individual class members.

107.    Issues of law and fact common to all class members are:

a.  Defendant's violations of the TCPA;

b.  Defendant's violations of the FDCPA;

c.  Defendant's conduct, pattern, and practice of continuing to place calls to cellular telephone numbers after being instructed to stop doing so;

d.  Defendant's use of an automatic telephone dialing system or artificial or prerecorded voice as defined by the TCPA;

e.  Defendant's status as a debt collector as defined by the FDCPA;

f.  Defendant's practice of rearranging payments from its customers from one alleged debt to others;

g.  The availability of statutory penalties; and

15

h.   The availability of attorneys' fees and costs.

108.   A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

109.   If brought and prosecuted individually, the claims of the members of the classes would require proof of the same material and substantive facts.

110.   The pursuit of separate actions by individual members of the classes would, as a practical matter, be dispositive of the interests of other members of the classes, and could substantially impair or impede their ability to protect their interests.

111.   The pursuit of separate actions by individual members of the classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

112.   These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the classes.

113.   The damages suffered by each individual member of the classes may be relatively small; thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the classes to redress the wrongs done to them.

114.   The pursuit of Plaintiffs' claims, and the claims of the members of the classes, in one forum will achieve efficiency and promote judicial economy.

115.   There will be little difficulty in the management of this action as a class action.

116.   Defendant has acted or refused to act on grounds generally applicable to the members of the classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**

16

**On behalf of the TCPA class**

117.    Plaintiffs repeat and re-allege each and every factual allegation included in paragraphs 1-116.

118.    Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system to place non-emergency calls to Plaintiffs' cellular telephone numbers, absent prior express consent.

119.    Defendant separately violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with placing non-emergency calls to Plaintiffs' cellular telephone numbers, absent prior express consent.

120.    As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiffs and the members of the TCPA class are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 15 U.S.C. § 1692c**
**On behalf of the FDCPA Stop-Calling class**

121.    Plaintiffs repeat and re-allege each and every factual allegation included in paragraphs 1-116.

122.    By calling Plaintiffs during work hours after it was instructed to stop doing so, Defendant violated 15 U.S.C. § 1692c(a)(1), which prohibits a debt collector from communicating "with a consumer  in connection with the collection of any debt at any . . . time or place known or which should be known to be inconvenient to the consumer."

123.    As a result of Defendant's violations of 15 U.S.C. § 1692c(a)(1), Plaintiffs and the members of the FDCPA Stop-Calling Class are entitled to damages in an amount to be proven at trial.

**Count III**
**Violation of 15 U.S.C. § 1692d**

**On behalf of the FDCPA Stop-Calling class**

124.     Plaintiffs repeat and re-allege each and every factual allegation included in paragraphs 1-116.

125.     By calling Plaintiffs after it was instructed to stop doing so, including at times it was instructed not to call Plaintiffs, Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiffs in connection with the collection of a debt. *See Gilmore v. USCB Corp.*, No. 5:17-CV-119 (MTT), 2017 WL 5230922, at *3 (M.D. Ga. Nov. 9, 2017) ("Taking the facts in the light most favorable to [the plaintiff], the Court notes that [the defendant], despite being informed it had the wrong number, has placed more than two calls to [the plaintiff's] cellular telephone number. . . . Thus, the Court concludes that [the plaintiff] has stated a claim for relief under § 1692d that is plausible on its face").

126.     As a result of Defendant's violations of 15 U.S.C. § 1692d, Plaintiffs and the members of the FDCPA Stop-Calling Class are entitled to damages in an amount to be proven at trial.

**Count IV**
**Violation of 15 U.S.C. § 1692e**
**On behalf of the FDCPA Rearranged Payments Class**

127.     Plaintiffs repeat and re-allege each and every factual allegation included in paragraphs 1-116.

128.     By failing to correctly identify the amount owed on Plaintiffs' alleged debts and rearranging Plaintiffs' payments to apply to different debts than Plaintiffs instructed, Defendant violated 15 U.S.C. § 1692e (prohibiting the use of a "false, deceptive, or misleading representation or means in connection with the collection of any debt.").

129.    By failing to correctly identify the amount owed on Plaintiffs' alleged debts, Defendant violated 15 U.S.C. § 1692e(2)(A) (prohibiting the "false representation of the character, amount, or legal status of any debt").

130.    As a result of Defendant's violations of 15 U.S.C. § 1692e, Plaintiffs and the members of the FDCPA Rearranged Payments Class are entitled to damages in an amount to be proven at trial.

**Count V**
**Violation of 15 U.S.C. § 1692h**
**On behalf of the FDCPA Rearranged Payments Class**

131.    Plaintiffs repeat and re-allege each and every factual allegation included in paragraph 1-116.

132.    At all relevant times, Defendant collected payments on multiple alleged debts from Plaintiffs and the members of the FDCPA Rearranged Payments Class.

133.    By failing to apply Plaintiffs' payments as directed by Plaintiffs and the parties' agreed payment terms, Defendant violated 15 U.S.C. § 1692h by failing to apply "payment[s] in accordance with the consumer's directions."

134.    As a result of Defendant's violations of 15 U.S.C. § 1692h, Plaintiffs and the members of the FDCPA Rearranged Payments Class are entitled to damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a)    Determining that this action is a proper class action;

b)    Designating Plaintiffs as class representatives under Federal Rule of Civil Procedure 23;

c)        Designating Plaintiffs' counsel as class counsel under Federal Rule of Civil Procedure 23;

d)        Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 15 U.S.C. §§ 1692c, 1692d, 1692e, and 1692h;

e)        Enjoining Defendant from continuing its violative behavior, including continuing to place calls to Plaintiffs' cellular telephone numbers, and to the cellular telephone numbers of members of the proposed TCPA class.

f)        Awarding Plaintiffs and the classes damages under 47 U.S.C. § 227(b)(3)(B) and 15 U.S.C. § 1692k(a)(1);

g)        Awarding Plaintiffs and the TCPA class treble damages under 47 U.S.C. § 227(b)(3);

h)        Awarding Plaintiffs and the classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i)        Awarding Plaintiffs and the classes reasonable attorneys' fees, costs, and expenses under 15 U.S.C. § 1692k(a)(3);

j)        Awarding Plaintiffs and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

k)        Awarding such other and further relief as the Court may deem just and proper.

**Trial by Jury**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all triable issues.

Dated: May 18, 2020                    Respectfully submitted,

*/s/ Ronald S. Weiss*
Ronald S. Weiss (0076096),

Attorney & Counselor
6725 West Central, M310
Toledo, OH 43617
Phone: 248-737-8000
Ron@RonWeissAttorney.com

Alexander D. Kruzyk (to seek
admission *pro hac vice*)
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Phone: (512) 803-1578
akruzyk@gdrlawfirm.com

*Attorney for Plaintiffs and the
proposed classes*